UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT BENYAMINI,<br><br>   Plaintiff,<br><br>   v.<br><br>M. BLACKBURN, et al.,<br><br>   Defendants. | No.  2:13-cv-0205 MCE AC P<br><br>ORDER AND FINDINGS &<br>RECOMMENDATIONS |

Plaintiff is a former state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  Currently pending are defendants' fully briefed motion for summary judgment (ECF No. 45) and plaintiff's motion to supplement (ECF No. 62).

I.      Plaintiff's Allegations

This case proceeds on plaintiff's original complaint.  ECF No. 1.  Plaintiff alleges that while he was being transferred to a new cell on April 29, 2009, defendants Blackburn and Marzan violated his rights under the Eighth Amendment by using excessive force on him during the transfer.  Id. at 8, 10. Specifically, plaintiff alleges that defendant Marzan wrapped his arm around his throat and squeezed hard enough to cut off plaintiff's air supply while whispering in his ear "your [sic] going into the block, it'll kill you."  Id. at 10.  Plaintiff further alleges that defendant Blackburn "man handled" him into his new cell, and after he was in the cell used the retention chain attached to his handcuffs to rip his hands through the food tray port causing severe

bruising on his wrists, forearms, and biceps. Id. at 8, 10.

II.  Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or

1   denials of its pleadings but is required to tender evidence of specific facts in the form of
2   affidavits, and/or admissible discovery material, in support of its contention that the dispute
3   exists.  See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  The opposing party must
4   demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the
5   suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W.
6   Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the
7   dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the
8   nonmoving party," Anderson, 447 U.S. at 248.

9        In the endeavor to establish the existence of a factual dispute, the opposing party need not
10  establish a material issue of fact conclusively in its favor.  It is sufficient that "'the claimed
11  factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the
12  truth at trial.'"  T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities
13  Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the "purpose of summary judgment is to pierce the
14  pleadings and to assess the proof in order to see whether there is a genuine need for trial."
15  Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

16       "In evaluating the evidence to determine whether there is a genuine issue of fact," the
17  court draws "all inferences supported by the evidence in favor of the non-moving party."  Walls
18  v. Cent. Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011).  It is the opposing party's
19  obligation to produce a factual predicate from which the inference may be drawn.  See Richards
20  v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine
21  issue, the opposing party "must do more than simply show that there is some metaphysical doubt
22  as to the material facts."  Matsushita, 475 U.S. at 586 (citations omitted).  "Where the record
23  taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no
24  'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

25       On November 26, 2014, defendants served plaintiff with notice of the requirements for
26  opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  ECF No. 45-1.
27  See Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988); Rand v. Rowland, 154 F.3d 952,
28  960 (9th Cir. 1998) (movant may provide notice) (en banc), cert. denied, 527 U.S. 1035 (1999).

1  III.     Defendants' Motion for Summary Judgment

2          Defendants move for summary judgment on the grounds that they did not violate

3  plaintiff's rights under the Eighth Amendment and alternatively that they are entitled to qualified

4  immunity.  ECF No. 45-2.

5          A.      Legal Standard Governing Eighth Amendment Claims

6          "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places

7  restraints on prison officials, who may not . . . use excessive physical force against prisoners."

8  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Hudson v. McMillian, 503 U.S. 1 (1992)).

9  "[W]henever prison officials stand accused of using excessive physical force in violation of the

10 [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith

11 effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson,

12 503 U.S. at 6-7 (citing Whitley v. Albers, 475 U.S. 312 (1986)).

13         When determining whether the force was excessive, the court looks to the "extent of the

14 injury suffered by an inmate . . . , the need for application of force, the relationship between that

15 need and the amount of force used, the threat 'reasonably perceived by the responsible officials,'

16 and 'any efforts made to temper the severity of a forceful response.'"  Hudson, 503 U.S. at 7

17 (citing Whitley, 475 U.S. at 321).  While de minimis uses of physical force generally do not

18 implicate the Eighth Amendment, significant injury need not be evident in the context of an

19 excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to

20 cause harm, contemporary standards of decency always are violated."  Hudson, at 9 (citing

21 Whitley, 475 U.S. at 327).

22         The extent of injury suffered by the plaintiff may indicate the amount of force applied.

23 Wilkins v. Gaddy, 559 U.S. 34, 37 (2010).  "[N]ot 'every malevolent touch by a prison guard

24 gives rise to a federal cause of action.'"  Id. (quoting Hudson, 503 U.S. at 9).

> The Eighth Amendment's prohibition of 'cruel and unusual'
> punishments necessarily excludes from constitutional recognition
> *de minimis* uses of physical force, provided that the use of force is
> not of a sort repugnant to the conscience of mankind.  An inmate
> who complains of a 'push or shove' that causes no discernible
> injury almost certainly fails to state a valid excessive force claim.

4

1
2
>   Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts."

3   Wilkins, 559 U.S. at 37-38 (internal citations and some internal quotation marks omitted).

Excessive force cases often turn on credibility determinations, and the excessive force inquiry "'nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom.'" Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005) (quoting Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002)). Therefore, "summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." Id. The Ninth Circuit has "held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury." Liston v. Cnty. of Riverside, 20 F.3d 965, 976 n.10 (9th Cir. 1997) (citations omitted).

B.   Arguments of the Parties

1. Defendants

Defendants claim that plaintiff refused to comply with orders to exit the transport vehicle and to enter his new cell, and that he threatened to spit on officers. ECF No. 45-2 at 2-5. They argue that while force was used on plaintiff, the force used was both necessary and appropriate to maintain control of the situation. Id. at 7-11. Alternatively, they argue that they are entitled to qualified immunity. Id. at 11-12.

2. Plainitff

At the outset, the court notes that plaintiff has failed to comply with Federal Rule of Civil Procedure 56(c)(1)(A), which requires that "a party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Plaintiff has also failed to file a separate document disputing defendants' statement of undisputed facts, as required by Local Rule 260(b).

However, it is well-established that the pleadings of pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). Nevertheless, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987)

1  (citation omitted), <u>overruled on other grounds</u>, <u>Lacey v. Maricopa County</u>, 693 F.3d 896 (9th

2  Cir. 2012) (en banc).  Accordingly, the court will consider the record before it in its entirety

3  despite plaintiff's failure to be in strict compliance with the applicable rules.  However, only

4  those assertions in the opposition which have evidentiary support will be considered.

5        In his opposition, plaintiff admits that he refused to comply with orders to exit the

6  transport vehicle, but denies that he attempted or threatened to spit on any officers.  ECF No. 57

7  at 2, 20.  He also argues that the force used by defendants was excessive in both type and degree,

8  and that he complied with all orders to the best of his ability.  <u>Id.</u> at 18-21, ¶¶ 5, 7-15.

9        C.    <u>Material Facts</u>

10        The following material facts are undisputed except as noted.[1]

11        At the time relevant to the complaint, plaintiff was an inmate in the custody of the

12  California Department of Corrections (CDCR) at the California State Prison (CSP)-Sacramento.[2]

13  Defendants' Statement of Undisputed Facts (DSUF) ¶ 1; ECF No. 1 at 10; ECF No. 57 at 17, ¶ 4.

14  On April 29, 2009, plaintiff was transferred from his cell on 3 Block to a cell on 2 Block.  DSUF

15  ¶ 5; ECF No. 1 at 10; ECF No. 57 at 17, ¶ 4.  Plaintiff initially refused to comply with orders to

16  leave his cell on 3 Block, but ultimately complied.  DSUF ¶¶ 7-8; ECF No. 45-6 at 34-36

17  [Excerpt of Plaintiff's Deposition (PL Depo) at 22:4-20, 24:9-14, 26:3-6].  He was then placed in

18  handcuffs and leg irons and taken to a transportation cart which was used to take him to 2 Block.

19  DSUF ¶ 9; ECF No. 45-6 at 36 [PL Depo at 26:8-10]; ECF No. 57 at 17, ¶ 5.

20        Upon arrival at 2 Block, plaintiff refused multiple orders to exit the transportation cart.

21  ECF No. 1 at 10; DSUF ¶¶ 13-17; ECF No. 45-6 at 32 [PL Depo at 32:5-10].  At this point,

22  defendants claim that plaintiff began threatening to spit on the officers and making hacking noises

---

[1] Portions of plaintiff's declaration (ECF No. 57 at 16-22) are illegible on the electronic docket. However, the original declaration filed with the court, while still difficult to read is largely legible. The few portions that remain illegible (¶ 2, line 4, first word; ¶ 5, line 8, after O'Brian to the end of the line; ¶ 8, line 2, first word up to Sgt.) are immaterial to resolution of the motion. Plaintiff is cautioned to be more mindful of the quality and legibility of the documents he submits to the court as illegible documents will not be considered.

[2] Plaintiff sometimes refers to the prison as "New Folsom."

6

as though he were preparing to spit.  DSUF ¶¶ 22, 24.  Plaintiff denies threatening to spit on the officers, but admitted in his deposition that he made a hacking noise while trying to clear his throat so he could take a deep breath because he believed he was going to be pepper sprayed. ECF No. 45-6 at 40 [PL Depo at 39:3-7].  The parties agree that at this point defendant Marzan restrained plaintiff from behind, but the level and method of restraint utilized are in dispute. Marzan asserts that he placed his right arm over plaintiff's shoulder and across his chest and his left hand on plaintiff's left shoulder and used his body weight to pull plaintiff back and prevent him from spitting on the other officers and that this contact lasted only seconds.  ECF No. 45-5 at 12 [Marzan Declaration at 2, ¶¶ 13-14, 19].  Plaintiff alleges that Marzan never restrained him by his shoulders and instead wrapped his arm around plaintiff's neck and attempted to strangle him while whispering threatening comments in his ear.  ECF No. 1 at 10; ECF No. 57 at 18, 21, ¶¶ 5, 14.  At some point, a spit net was placed over plaintiff's head.  DSUF ¶ 27; ECF No. 45-6 at 41 [PL Depo at 40:16-24].

When plaintiff was removed from the transportation cart, he alleges that handcuffs were applied so tightly that he believed the circulation to his wrists was cut-off and he was then "manhandled" to his new cell.[3]  ECF No. 57 at 19, ¶ 7.  It is not clear whether the handcuffs he was already wearing were tightened or new handcuffs were applied.  Upon arrival at plaintiff's new cell, defendant Blackburn took hold of plaintiff's handcuffs in order to control his movement.  DSUF ¶ 33; ECF No. 57 at 19, ¶ 8.  Defendants allege that plaintiff attempted to pull away from Blackburn as he took hold of the handcuffs and that plaintiff attempted to grab Blackburn's left hand.  DSUF ¶¶ 34, 36.  A retention chain was then attached to plaintiff's handcuffs and he was ordered to enter his cell.  DSUF ¶¶ 37-38.  Plaintiff refused the order and Blackburn took hold of plaintiff's left thumb and wrist and directed plaintiff into the cell.  DSUF

---

[3] Defendants object on the grounds that plaintiff is not qualified to opine as to whether his circulation was cut off and does not identify the basis for this conclusion.  ECF No. 61-3 at 3. This objection is overruled to the extent that plaintiff's statement is read to demonstrate plaintiff's belief that his circulation was cut off, regardless of whether that was actually the case, and that the handcuffs were extremely tight on plaintiff's wrists.  Plaintiff has personal knowledge of the physical sensations he experienced.

¶¶ 39-40.  Plaintiff admits that he did pull away from Blackburn, but claims that it was an involuntary reaction and did not happen until after Blackburn had control of him and began twisting and folding his wrists causing severe pain.[4]  ECF No. 57 at 21, ¶ 13.  He denies attempting to grab Blackburn's hand.  Id. at 20, ¶ 12.  Plaintiff agrees that at some point a retention chain was attached to his handcuffs but does not explicitly deny that he refused an order to enter his cell.  Id. at 19, ¶ 8.  He states that after Blackburn finished folding his wrist and thumb he was shoved into his cell.  Id.

Once plaintiff was in his cell, his leg irons were removed and the cell door was closed with the retention chain still attached to plaintiff's handcuffs.  DSUF ¶¶ 43, 45; ECF No. 57 at 19, ¶ 8.  Defendants state that after the cell door was shut, Blackburn ordered plaintiff to place his wrists through the food tray port and the handcuffs were removed.  DSUF ¶ 46.  Plaintiff alleges that after the cell door was shut, Blackburn turned away from the cell and ran while yanking the chain as hard as he could, resulting in plaintiff's arms being pulled though the food tray port up to his biceps.  ECF No. 57 at 19, ¶¶ 8-9.  There is no indication from either party that plaintiff resisted the order to place his wrists through the food tray port or offered any resistance after being locked in his cell.

After the incident, plaintiff was evaluated by medical staff.  DSUF ¶ 57; ECF No. 1 at 8.  Defendants state that, while escorting plaintiff to medical, Blackburn noted only superficial scratches and scrapes on plaintiff.  DSUF ¶ 56.  The nurse noted that plaintiff stated he "got pulled through the food tray port," that he had right shoulder pain from a prior injury, and that he had superficial scrapes with no bleeding and some bruising or discoloration on his right shoulder.  DSUF ¶¶ 58-59.  Plaintiff claims that the report minimized his injuries and that his wrists "turned black and blue, bled and [his] arms were bruised all the way up to [his] inner biceps" and that following the use of force his hands were numb for weeks.[5]  ECF No. 57 at 20, ¶ 10.

---

[4]  Defendants' objection to the characterization of the actions as malicious and sadistic are overruled.  Plaintiff previously stated that Blackburn was smiling at him while twisting his wrists (ECF No. 57 at 19, ¶ 8).  If true, this fact supports an inference that Blackburn's intent was to cause plaintiff pain.

[5]  Defendants' objections are overruled.  Plaintiff would have personal knowledge of his visible (continued)

8

D. <u>Excessive Use of Force</u>

1. <u>Injury Suffered by Plaintiff</u>

The nature and extent of plaintiff's injury, while not dispositive, must be considered in determining whether the evidence supports a reasonable inference that defendants' alleged use of force was motivated by malicious or sadistic intent. <u>See</u> <u>Hudson</u>, 503 U.S. at 7 (court must consider the "extent of the injury"). "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." <u>Wilkins</u>, 559 U.S. at 38. Defendants argue that plaintiff suffered only de minimis injury and that his claims regarding both the force used and the extent of his injuries are not supported by the nursing evaluation conducted shortly after the use of force. ECF No. 45-2 at 10-11; ECF No. 61 at 3. However, plaintiff alleged in his verified complaint that the record of his injuries was inaccurate and reflected less severe injuries than he actually suffered. ECF No. 1 at 8. Plaintiff has also testified that defendants inflicted severe pain, that his visible injuries included bleeding and significant bruising, and that in the following weeks he suffered from numbness in his hands. <u>Id.</u> at 8, 10; ECF No. 57 at 19-20, ¶¶ 8-10. Plaintiff has personal knowledge of his visible injuries and of his non-visible injuries in the form of pain and numbness, and his evidence contradicts that put forth by defendants. Taken in the light most favorable to plaintiff, his injuries were not de minimis. In any event, there is a triable dispute of fact regarding the extent of the injuries.

2. <u>Need for Application of Force</u>

An inmate's refusal to comply with orders may present a threat to the safety and security of a prison. <u>Lewis v. Downey</u>, 581 F.3d 467, 476 (7th Cir. 2009); <u>Whitley</u>, 475 U.S. at 320-22; <u>Spain v. Procunier</u>, 600 F.2d 189, 195 (9th Cir. 1979).

---

injuries at the time and has seen the nurses report and is therefore has a basis to testify that the report is not an accurate depiction of his injuries. With respect to plaintiff's claims regarding whether his hand was broken, the objection is overruled to the extent that plaintiff would be able to testify that he believed his hand was broken due to the pain he experienced.

> Orders given must be obeyed.  Inmates cannot be permitted to decide which orders they will obey, and when they will obey them . . . .  Inmates are and must be required to obey orders.  When an inmate refuse[s] to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials.  Such refusal and denial of authority places the staff and other inmates in danger.

Lewis, 581 F.3d at 476 (quoting Soto v. Dickey, 744 F.2d 1260, 1267 (7th Cir. 1984)).

It is undisputed that plaintiff refused orders to exit the transportation cart (ECF No. 1 at 10; DSUF ¶¶ 13-17; ECF No. 45-6 at 32 [PL Depo at 32:5-10]), made a hacking noise (DSUF ¶ 24; ECF No. 45-6 at 40 [PL Depo at 39:3-7]), and pulled away from defendant Blackburn either as Blackburn was taking control of plaintiff's handcuffs or shortly thereafter (DSUF ¶ 34; ECF No. 57 at 21, ¶ 13).  From these undisputed facts, it is arguable that some use of force was justified to bring plaintiff into compliance with the orders to exit the transportation cart, and defendants could have reasonably believed that plaintiff was preparing to spit on the officers escorting him or that he was attempting to free himself from Blackburn's control.  Therefore this factor tips in defendants' favor with respect to the force used on plaintiff to make him exit the transportation cart and to place him in his cell.  However, there is no indication that force was necessary or justified after plaintiff was placed in his new cell and the door was locked and this factor tips in plaintiff's favor with respect to the force used to allow for the removal of his handcuffs.

### 3. Relationship Between Need for Force and Amount of Force Used

In determining whether there has been an Eight Amendment violation, the standard is "malicious and sadistic force, not merely objectively unreasonable force."  Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002); Hudson, 503 U.S. at 9 (not every malevolent touch gives rise to an Eighth Amendment claim).  "The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense."  Whitley, 475 U.S. at 319.

According to plaintiff, he did not attempt or threaten to spit on any of the officers, but he

1   did make a hacking noise.  ECF No. 45-6 at 40 [PL Depo at 39:3-7].  On these facts, defendant
2   Marzan could have reasonably believed that plaintiff was preparing to spit on the other officers,
3   necessitating some level of restraint.  However, Marzan do not allege that he believed plaintiff
4   would attempt to do anything more than spit on the other officers.  Coupled with plaintiff's
5   allegations that Marzan whispered threats in plaintiff's ear while strangling him, this cannot be
6   viewed as a mere overreaction.  Plaintiff's allegations raise a material dispute as to whether the
7   force utilized by Marzan was excessive in light of the perceived threat.
8       With respect to the allegations against Blackburn, neither party alleges that plaintiff
9   struggled or refused to allow his handcuffs to be removed once he was locked in his new cell and
10  defendants' account indicates that plaintiff complied with orders to place his wrists in the food
11  tray port so his handcuffs could be removed.  DSUF ¶ 46.  If plaintiff's account of the force used
12  by Blackburn to pull his arms through the food tray port is true, there was no justification for the
13  use of any force because plaintiff was did not pose a threat at that time.
14      This factor weighs in plaintiff's favor.
15          4.  Threat Perceived by Defendants
16      The fourth Hudson factor considers "the extent of the threat to the safety of staff and
17  inmates, as reasonably perceived by the responsible officials on the basis of the facts known to
18  them."  Whitley, 475 U.S. at 321.  In weighing this factor, courts should be mindful that "in
19  making and carrying out decisions involving the use of force to restore order in the face of a
20  prison disturbance, prison officials undoubtedly must take into account the very real threats the
21  unrest presents to inmates and prison officials alike, in addition to the possible harms to inmates
22  against whom force might be used."  Id. at 320.
23      As already discussed, even if plaintiff did not make verbal threats to spit on officers, it
24  was reasonable for Marzan to believe that plaintiff was preparing to spit on officers in light of his
25  resistance and the hacking noise he made.  This factor therefore weighs in Marzan's favor.
26  However, the court cannot find that it was reasonable for Blackburn to perceive any threat from
27  plaintiff after he was locked in his cell and apparently complying with orders.  This factor
28  therefore weighs in plaintiff's favor against Blackburn.

### 5. Efforts Made to Temper Severity Force

Whether defendants attempted to temper the severity of the force used upon plaintiff is entirely dependent upon which version of the facts is believed. In plaintiff's version of the facts, which must be taken as true for the purposes of summary judgment, defendants not only failed to temper the amount of force used, but showed signs of deliberately using force on plaintiff for no other reason than to cause him harm. Plaintiff alleges that defendant Marzan strangled him while whispering threats in his ear (ECF No. 1 at 10; ECF No. 57 at 18, 21, ¶ 5) while defendant Blackburn used the retention chain to yank plaintiff's arms through the food tray port after plaintiff was in his cell and offering no resistance (ECF No. 57 at 19, ¶¶ 8-9). This factor therefore tips in plaintiff's favor.

### 6. Conclusion

For these reasons, the court finds material issues of fact as to whether defendants' use of force against plaintiff was excessive and in violation of plaintiff's Eighth Amendment rights. Summary judgment should therefore be denied.

### E.     Qualified Immunity

Government officials are immune from civil damages "unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In analyzing a qualified immunity defense, the court must consider the following: (1) whether the alleged facts, taken in the light most favorable to the plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was clearly established at the time of the incident. Saucier v. Katz, 533 U.S. 194, 201 (2001) overruled in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009) (overruling Saucier's requirement that the two prongs be decided sequentially). These questions may be addressed in the order most appropriate to "the circumstances in the particular case at hand." Pearson, 555 U.S. at 236. Thus, if a court decides that plaintiff's allegations do not support a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. On the other hand, if a court determines that the

right at issue was not clearly established at the time of the defendant's alleged misconduct, the court need not determine whether plaintiff's allegations support a statutory or constitutional violation. Pearson, 555 U.S. at 236, 242.

The court has already established that, taken in the light most favorable to plaintiff, the allegations demonstrate a violation of plaintiff's Eighth Amendment rights. The first prong of the analysis is therefore resolved in plaintiff's favor.

With respect to whether there was a clearly established right, the law at the time of the use of force was clear that force used sadistically and maliciously for the very purpose of causing harm violated the Eighth Amendment. Whitley, 475 U.S. at 320-21. "[S]ummary judgment based on qualified immunity is improper if, under the plaintiff's version of the facts, and in light of the clearly established law, a reasonable officer could not have believed his conduct was lawful." Schwenk v. Hartford, 204 F.3d 1187, 1196 (9th Cir. 2000) (citing Grossman v. City of Portland, 33 F.3d 1200, 1208 (9th Cir. 1994)). The issues of fact surrounding the degree and type of force used preclude a finding that defendants are entitled to qualified immunity because a reasonable officer would not have believed that it was lawful to use force on plaintiff for the purpose of inflicting harm.

### F. Conclusion

Because there are issues of material fact, the defendants' motion for summary judgment must be denied. Moreover, due to the nature of the factual disputes, defendants are not entitled to qualified immunity.

## IV. Plaintiff's Motion to Supplement the Record

Plaintiff moves to supplement the record for his opposition to defendants' motion for summary judgment with a copy of a cell extraction video for a cell extraction that took place on May 6, 2009. ECF No. 62. The cell extraction at issue in this case took place on April 29, 2009. ECF No. 1 at 10. Plaintiff states that he inadvertently forgot to include the video when he submitted his opposition and that it is crucial to his case because it shows the injuries he sustained on April 29, 2009. ECF No. 62 at 2. Defendants oppose the motion on the grounds that the video is irrelevant, unauthenticated, and inadmissible hearsay. ECF No. 64.

Because the video is proffered to bolster plaintiff's sworn statements regarding his injury, and the court has found plaintiff's statements, standing alone, are sufficient to defeat summary judgment, plaintiff's motion to supplement the record will be denied.

V.      Conclusion

For the reasons set forth above, defendants' motion for summary judgment should be denied and plaintiff's motion to supplement the record will be denied.

IT IS HEREBY ORDERED that plaintiff's motion to supplement the record (ECF No. 62) is denied.

IT IS FURTHER RECOMMENDED that defendants' motion for summary judgment (ECF No. 45) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 30, 2015

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

14