UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT BENYAMINI,<br><br>    Plaintiff,<br><br>    v.<br><br>M. BLACKBURN, et al.,<br><br>    Defendants. | No. 2:13-cv-0205 MCE AC P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a former state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. This matter proceeds on plaintiff's complaint (ECF No. 1), which was found to state claims against defendants for use of excessive force in violation of the Eighth Amendment (ECF No. 8). Currently before the court is defendants' motion for an order declaring plaintiff a vexatious litigant and requiring security in the amount of no less than $3,270. ECF No. 88. Plaintiff opposes the motion. ECF No. 101. For the reasons set forth below, the court will recommend that defendants' motion be denied.

I.   Procedural History

Plaintiff initiated this action on February 4, 2013, and is proceeding on a complaint that was found to state Eighth Amendment claims against defendants Blackburn and Marzan,

////

////

correctional staff at California State Prison-Sacramento ("CSP-Sac").[1] Specifically, plaintiff alleges that on April 29, 2009, while plaintiff was being transferred to a new cell block, defendant Marzan wrapped his arm around plaintiff's throat and began squeezing, which cut off plaintiff's air supply and caused plaintiff to believe he was going to die. ECF No. 1 at 10. Plaintiff asserts that defendant Marzan also whispered in his ear "your [sic] going into the block, it'll kill you." Id. Plaintiff claims that defendant Blackburn subsequently "man handled" him into the cell and used retention chains attached to his handcuffs to rip plaintiff's hands through the food tray port. Id. Plaintiff states that he had severe bruising on his wrists, forearms, and biceps as a result of defendant Blackburn's conduct, and that he suffered from nightmares as a result of the strangulation. Id.

On March 30, 2016, defendants filed the instant motion. ECF No. 88. After obtaining two extensions of time to file an opposition (ECF Nos. 93, 97), plaintiff filed an opposition to defendants' motion (ECF No. 101). Defendants filed a reply. ECF No. 102. The motion is now fully briefed and before the court.

II.     Defendants' Request for Judicial Notice

Defendants ask the court to take judicial notice of twenty-three instances of prior litigation brought by plaintiff. ECF No. 89. The court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (citation and internal quotation marks omitted) (collecting cases); Fed. R. Evid. 201(b)(2) (court may take judicial notice of facts that are capable of accurate determination by sources whose accuracy cannot reasonably be questioned). Accordingly, the request will be granted and the court takes judicial notice of the following instances of litigation initiated by plaintiff:

////

---

[1] Plaintiff contends that at all times relevant to this action he was housed at "New Folsom State Prison." CSP-Sac is sometimes called "New Folsom" and is located next to Folsom State Prison. Plaintiff has now been released from custody.

1.   Benyamini v. Johnson, Ninth Circuit Case No. 11-16971 (appeal from E.D. Cal. Case No. 1:07-cv-0907-LJO-DLB).  On December 5, 2011, the Ninth Circuit dismissed the appeal for failure to prosecute after plaintiff failed to pay the filing fee, which he had been ordered to pay because his appeal was found to be "frivolous."  ECF No. 89 at 7-9.

2.   Benyamini v. Johnson, E.D. Cal. Case No. 1:07-cv-0907-LJO-DLB.  Plaintiff was found to state a cognizable claim against multiple defendants, but the action was ultimately dismissed on July 27, 2010, for plaintiff's failure to timely submit service documents.  Id. at 23-26.

3.   Benyamini v. Simpson, E.D. Cal. Case No. 2:08-cv-1552-GEB-DAD.  Case dismissed on July 8, 2009, for failure to state a claim.  Id. at 35-41.

4.   Benyamini v. Anderson, E.D. Cal. Case No. 1:07-cv-1596-OWW-GSA.  Plaintiff's complaint was dismissed with leave to amend for failure to state a claim.  When plaintiff failed to file an amended pleading, the case was dismissed on May 13, 2009, on the ground that the only pleading on file failed to state a claim.  Id. at 48-52, 56-57.

5.   Benyamini v. Manjuano, E.D. Cal. Case No. 1:06-cv-1096-AWI-GSA.  Plaintiff was found to state an Eighth Amendment claim against multiple Defendants.  On March 4, 2015, judgment was entered for defendants following grant of their motion for summary judgment.  Id. at 89-103.

6.   Benyamini v. Manjuano, E.D. Cal. Case No. 1:07-cv-1697-AWI-GSA.  The case was dismissed on October 7, 2008, as duplicative of 1:06-cv-1096-AWI-GSA.  Id. at 105.

7.   Benyamini v. Rivers, E.D. Cal. Case No. 2:09-cv-0075-JAM-KJM.  Plaintiff's complaint was dismissed with leave to amend for failure to state a claim.  On November 25, 2009, the case was dismissed without prejudice at plaintiff's request.  Id. at 111-18.

8.   Benyamini v. Kretch, E.D. Cal. Case No. 2:09-cv-0170-GEB-DAD.  Plaintiff's complaint was dismissed with leave to amend for failure to state a claim.  On August 25, 2009, the case was dismissed for plaintiff's failure to file an amended complaint.  Id. at 123-28, 131-37.

9.   Benyamini v. Sharp, E.D. Cal. Case No. 2:09-cv-0173-FCD-EFB.  Plaintiff's complaint was found to state a claim against one defendant.  Plaintiff was granted leave to file an

3

1   amended pleading or to submit service documents.  After failing to submit either the materials

2   necessary to serve process or an amended complaint, the case was dismissed for failure to

3   prosecute on March 15, 2010.  Id. at 146-50

4           10. Benyamini v. Harris, E.D. Cal. Case No. 2:09-cv-2462-MCE-DAD.  Plaintiff's

5   complaint was found to state a claim against multiple defendants.  On September 30, 2010, the

6   case was dismissed for plaintiff's failure to submit service documents.  Id. at 157-60.

7           11. Benyamini v. Forsthy, E.D. Cal. Case No. 2:09-cv-2323-GEB-DAD.  Plaintiff's

8   complaint was found to state a claim, but the case was dismissed on June 1, 2012, for failure to

9   submit documents necessary to effect service.  Id. at 172-76.

10          12. Benyamini v. Forsthy, Ninth Circuit Case No. 12-16402 (appeal from E.D. Cal. Case

11  No. 2:09-cv-2323-GEB-DAD).  The Ninth Circuit summarily affirmed the district court's

12  judgment after finding that the questions raised were "so insubstantial as not to require further

13  argument."  Id. at 181.

14          13. Benyamini v. Byrd, Ninth Circuit Case No. 11-17218 (appeal from E.D. Cal. Case No.

15  2:10-cv-0101-KJM-DAD).  Plaintiff's application to proceed in forma pauperis was denied

16  because the appeal was found to be frivolous.  The appeal was subsequently dismissed for

17  plaintiff's failure to pay the filing fee.  Id. at 184-86.

18          14. Benyamini v. Forsythe, E.D. Cal. Case No. 2:09-cv-2453-GEB-EFB.  Plaintiff's

19  complaint was found to state a claim against multiple defendants.  Plaintiff was granted leave to

20  either file an amended complaint or return documents necessary to effect service.  When plaintiff

21  did neither, the case was dismissed on July 13, 2011, for failure to prosecute.  Id. at 222-25.

22          15. Benyamini v. Forsythe, Ninth Circuit Case No. 11-16838 (appeal from E.D. Cal. Case

23  No. 2:09-cv-2453-FCD-EFB).  The Ninth Circuit reviewed and affirmed the district court's

24  dismissal of the action.  Id. at 227-28.

25          16. Benyamini v. Colvin, E.D. Cal. Case No. 2:12-cv-03160-JAM-EFB.  Plaintiff's

26  complaint was found to state a claim against one defendant.  Plaintiff was granted leave to either

27  file an amended complaint or return documents necessary to effect service.  When plaintiff did

28  neither, the case was dismissed on November 29, 2012, for failure to prosecute.  Id. at 236-39.

17. <u>Benyamini v. Mendoza</u>, E.D. Cal. Case No. 2:09-cv-2602-LKK-AC.  Plaintiff's complaint was found to state a claim against multiple defendants.  On motion by defendants, plaintiff's in forma pauperis status was revoked and he was ordered to pay the filing fee in full.  The case was dismissed on November 27, 2012, for plaintiff's failure to pay the filing fee.  <u>Id.</u> at 258-72.

18. <u>Benyamini v. Mendoza</u>, Ninth Circuit Case No. 12-16341 (appeal from E.D. Cal. Case No. 2:09-cv-2602-LKK-GGH).  Plaintiff's application to proceed in forma pauperis was denied because the appeal was found to be frivolous.  The appeal was subsequently dismissed for plaintiff's failure to respond to a court order.  <u>Id.</u> at 274-76.

19. <u>Benyamini v. Sahoota</u>, E.D. Cal. Case No. 2:11-cv-2916-GEB-EFB.  Plaintiff's complaint was dismissed with leave to amend for failure to state a claim.  When plaintiff failed to file an amended complaint, the case was dismissed on August 1, 2012, for failure to comply with a court order.  <u>Id.</u> at 289-92.

20. <u>Benyamini v. Sahoota</u>, Ninth Circuit Case No. 12-16863 (appeal from E.D. Cal. Case No. 2:11-cv-2916-GEB-EFB).  The Ninth Circuit reviewed and affirmed the district court's dismissal of the action.  <u>Id.</u> at 294-95.

21. <u>Benyamini v. Wolfe</u>, E.D. Cal. Case No. 2:12-cv-1578-WBS-CKD.  Plaintiff's complaint was found to state a claim against multiple defendants.  On motion by defendants, plaintiff's in forma pauperis status was revoked and he was ordered to pay the filing fee in full.  The case was dismissed on March 6, 2014, for plaintiff's failure to pay the filing fee.  <u>Id.</u> at 307-10.

22. <u>In re Robert P. Benyamini</u>, Ninth Circuit Case No. 12-80209 (appeal from E.D. Cal. Case No. 2:12-cv-3008-WBS).  Pursuant to a pre-filing review order, plaintiff's appeal was not allowed to proceed because "the appeal is so insubstantial as to not warrant further review."  <u>Id.</u> at 306.

23. <u>Benyamini v. Mayfield</u>, E.D. Cal. Case No. 2:11-cv-0659-WBS-KJN. The case was dismissed on July 11, 2011, for failure to pay the filing fee and/or submit an application to proceed in forma pauperis.  <u>Id.</u> at 315-18.

III.   Discussion

Pursuant to this court's Local Rule 151(b), "[t]he provisions of Title 3A, part 2, of the California Code of Civil Procedure, relating to vexatious litigants, are hereby adopted as a procedural Rule of this Court on the basis of which the Court may order the giving of a security, bond, or undertaking, although the power of the Court shall not be limited thereby."  A defendant's motion for an order requiring a plaintiff to furnish security must be "supported by a showing [(a)] that the plaintiff is a vexatious litigant and [(b)] that there is not a reasonable probability that he or she will prevail in the litigation against the moving defendant." Cal. Civ. Proc. Code § 391.1.  Upon consideration of the motion, the court "shall consider any evidence, written or oral, by witnesses or affidavit, as may be material to the ground of the motion." Cal. Civ. Proc. Code § 391.2.  If "the court determines that the plaintiff is a vexatious litigant and that there is no reasonable probability that the plaintiff will prevail," the court shall order the plaintiff to furnish security in an amount to be fixed by the court. Cal. Civ. Proc. Code § 391.3(a).  "When security that has been ordered furnished is not furnished as ordered, the litigation shall be dismissed as to the defendant for whose benefit it was ordered furnished." Cal. Civ. Proc. Code § 391.4.

    1.   Vexatious Litigant

Defendants move to have plaintiff deemed a vexatious litigant under two provisions of California's Vexatious Litigants statute, which is codified at California Code Civil Procedure §§ 391-391.7. First, they argue that plaintiff commenced or maintained twenty-three unsuccessful lawsuits in the past seven years in violation of Section 391(b)(1), which defines a vexatious litigant as one who "[i]n the immediately preceding seven-year period has commenced, prosecuted, or maintained in propria persona at least five litigations other than in small claims court that have been . . . finally determined adversely to the person."  Second, defendants argue that plaintiff should be deemed a vexatious litigant because, within his lawsuits, he filed numerous unmeritorious motions and papers in violation of Section 391(b)(3), which defines a vexatious litigant as one who "[i]n any litigation while acting in propria persona, repeatedly files unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engaged in

1  other tactics that are frivolous or solely intended to cause unnecessary delay."

2  Defendants have summarized twenty-three actions filed by plaintiff, each of which
3  resulted in the termination of the case adversely to plaintiff. McColm v. Westwood Park Ass'n,
4  62 Cal. App. 4th 1211, 1220-21 (Cal. Ct. App. 1998) (California's vexatious litigant statute
5  applies to appeals, and each appeal is considered "new litigation" within the meaning of the
6  statute), disapproved on other grounds by John v. Superior Court of Los Angeles, 63 Cal. 4th 91,
7  99 n.2 (Cal. 2016). Unlike federal law, which considers evidence of misconduct, California law
8  requires only that the plaintiff's actions have been "finally determined adversely" to him. Cal.
9  Civ. Proc. Code § 391(b)(1); see also Scott v. Palmer, No. 1:09-cv-01329-LJO-SKO PC, 2012
10 WL 5838997, at *8, 2012 U.S. Dist. LEXIS 164364, at *23-24 (E.D. Cal. Nov. 16, 2012) (cases
11 dismissed for failure to prosecute are considered "finally determined adversely"). In his
12 opposition, plaintiff argues that these cases should not be considered because complaints
13 dismissed at the screening stage are not considered filed and therefore do not constitute
14 "litigation" within the meaning of the vexatious litigant case law. ECF No. 101 at 3-4.
15 Additionally, plaintiff asserts that he has been previously unable to afford the filing fee to proceed
16 on his complaints and therefore is also unable to afford the vexatious litigant security deposit. Id.
17 at 6. Finally, plaintiff claims that the government has suppressed evidence illustrating his
18 wrongful incarceration and the merits of his claims. None of plaintiff's arguments has any merit.

19 As an initial matter, the court notes that the seven-year period is measured from the date
20 the motion to find plaintiff vexatious was filed. Stolz v. Bank of Am., 15 Cal. App. 4th 217, 224
21 (Cal. Ct. App. 1993). Therefore, in order to be considered, a case must have been commenced or
22 pending on or after March 30, 2009. In reviewing the cases identified by defendants, the court
23 has identified one case that does not fall within the seven-year window. Benyamini v. Manjuano,
24 No. 1:07-cv-1697-AWI-GSA, was dismissed as duplicative on October 7, 2008. ECF No. 89 at
25 105. Since the case was terminated prior to March 30, 2009, it is not properly considered by the
26 court in its Section 391(b)(1) analysis.

27 With respect to plaintiff's arguments, he asserts that complaints dismissed at screening are
28 not considered filed and relies on Garcia v. Lacey, 231 Cal. App. 4th 402 (Cal. Ct. App. 2014).

However, the circumstances in that case are distinguishable from those found here. In <u>Garcia</u>, defendants were relying upon complaints filed in the United States District Court for the Central District of California. <u>Id.</u> at 408-10. The court found that in several of the cases relied upon by the defendants, the dockets specifically stated that the complaints were lodged, pending permission to proceed in forma pauperis, and that because permission was denied, the complaints were never filed. <u>Id.</u> at 411-12. The majority of the cases relied upon by defendants in this case were filed in this court. The procedures for the Eastern District differ from those of the Central District, and plaintiff's complaints were filed by the Clerk of the Court upon receipt. However, even if plaintiff were correct and complaints that are dismissed at the screening stage do not constitute litigation, nine of the cases identified by defendants survived screening. Those cases are, by themselves, sufficient to find that plaintiff is a vexatious litigant.

Plaintiff's claims that he will be unable to afford the filing fee and any security and that his previous complaints should not have been dismissed are irrelevant to the analysis. The statute requires only that the cases were "finally determined adversely" to him in order to find that he is vexatious.

Since at least five of the cases identified by defendants meet the standard set forth under Section 391(b)(1), the court concludes that the defendants have met their burden of establishing that plaintiff qualifies as a vexatious litigant.

The court, however, finds that defendants have not met their burden of establishing that plaintiff qualifies as a vexatious litigant pursuant to Section 391(b)(3). Under that provision, what constitutes "repeatedly" or "unmeritorious" in any given case is left to the sound discretion of the trial court, and while broad, this discretion is not unfettered. <u>Morton v. Wagner</u>, 156 Cal. App. 4th 963, 971-72 (Cal. Ct. App. 2007) (citation and quotation marks omitted). While there is no bright-line rule, most cases falling within the state statute "involve situations where litigants have filed dozens of motions either during the pendency of an action or relating to the same judgment." <u>Id.</u> at 972. (citation omitted). Plaintiff has only filed one complaint that was dismissed as duplicative and examination of the docket in each of the cases identified by defendants convinces the undersigned that plaintiff's filings do not qualify as vexatious.

1    Unsuccessful motions are not necessarily unmeritorious or frivolous; "repeated motions must be
2    so devoid of merit and be so frivolous that they can be described as a flagrant abuse of the
3    system, have no reasonable probability of success, lack reasonable or probable cause or excuse
4    and are clearly meant to abuse the processes of the courts and to harass the adverse party." Id. at
5    972 (internal quotation marks omitted) (quoting Wolfgram v. Wells Fargo Bank, 53 Cal. App. 4th
6    43, 58 (Cal. Ct. App. 1997)). Nonetheless, having concluded that plaintiff qualifies as a vexatious
7    litigant pursuant to Section 391(b)(1), the court will proceed with the second step of the analysis.

    2.  Success on the Merits

9    In order to grant defendants' motion, the court must also find that plaintiff does not have a
10   reasonable probability of prevailing in this case. Cal. Civ. Proc. Code § 391.3. In making this
11   determination, the court is required to weigh the evidence, and it does not assume the truth of
12   plaintiff's allegations. Moran v. Murtaugh Miller Meyer & Nelson, LLP, 40 Cal. 4th 780, 784-86
13   (Cal. 2007); Golin v. Allenby, 190 Cal. App. 4th 616, 635 (Cal. Ct. App. 2010).
14   As noted, this action is proceeding on plaintiff's claim that defendant Marzan wrapped his
15   arm around plaintiff's neck, strangling him, followed by defendant Blackburn "man handling"
16   plaintiff into his cell and using the retention chain to rip his hands and arms through the food port,
17   in violation of the Eighth Amendment. ECF No. 1 at 10.

    a.  Eighth Amendment Legal Standards

19   "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places
20   restraints on prison officials, who may not . . . use excessive physical force against prisoners."
21   Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Hudson v. McMillian, 503 U.S. 1 (1992)).
22   "[W]henever prison officials stand accused of using excessive physical force in violation of the
23   [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith
24   effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson,
25   503 U.S. at 6-7 (citing Whitley v. Albers, 475 U.S. 312 (1986)).
26   When determining whether the force was excessive, the court looks to the "extent of the
27   injury suffered by an inmate . . . , the need for application of force, the relationship between that
28   need and the amount of force used, the threat 'reasonably perceived by the responsible officials,'

and 'any efforts made to temper the severity of a forceful response.'" Id. at 7 (citing Whitley, 475 U.S. at 321). While de minimis uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Id. at 9 (citing Whitley, 475 U.S. at 327).

The extent of injury suffered by the plaintiff may indicate the amount of force applied. Wilkins v. Gaddy, 559 U.S. 34, 37 (2010). "[N]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" Id. (quoting Hudson, 503 U.S. at 9).

> The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim. Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts."

Wilkins, 559 U.S. at 37-38 (internal citations and some internal quotation marks omitted).

### b. Use of Force Incident

The following material facts are taken from the findings and recommendations on defendants' motion for summary judgment.[2]

> On April 29, 2009, plaintiff was transferred from his cell on 3 Block to a cell on 2 Block. DSUF ¶ 5; ECF No. 1 at 10; ECF No. 57 at 17, ¶ 4. Plaintiff initially refused to comply with orders to leave his cell on 3 Block, but ultimately complied. DSUF ¶¶ 7-8; ECF No. 45-6 at 34-36 [Excerpt of Plaintiff's Deposition (PL Depo) at 22:4-20, 24:9-14, 26:3-6]. He was then placed in handcuffs and leg irons and taken to a transportation cart which was used to take him to 2 Block. DSUF ¶ 9; ECF No. 45-6 at 36 [PL Depo at 26:8-10]; ECF No. 57 at 17, ¶ 5.
>
> Upon arrival at 2 Block, plaintiff refused multiple orders to exit the transportation cart. ECF No. 1 at 10; DSUF ¶¶ 13-17; ECF No. 45-6 at 32 [PL Depo at 32:5-10]. At this point, defendants claim that plaintiff began threatening to spit on the officers and

---

[2] Defendants offer the same evidence, plus additional deposition transcript excerpts, in support of the instant motion as they did in support of their motion for summary judgment.

10

making hacking noises as though he were preparing to spit. DSUF ¶¶ 22, 24. Plaintiff denies threatening to spit on the officers, but admitted in his deposition that he made a hacking noise while trying to clear his throat so he could take a deep breath because he believed he was going to be pepper sprayed. ECF No. 45-6 at 40 [PL Depo at 39:3-7]. The parties agree that at this point defendant Marzan restrained plaintiff from behind, but the level and method of restraint utilized are in dispute. Marzan asserts that he placed his right arm over plaintiff's shoulder and across his chest and his left hand on plaintiff's left shoulder and used his body weight to pull plaintiff back and prevent him from spitting on the other officers and that this contact lasted only seconds. ECF No. 45-5 at 12 [Marzan Declaration at 2, ¶¶ 13-14, 19]. Plaintiff alleges that Marzan never restrained him by his shoulders and instead wrapped his arm around plaintiff's neck and attempted to strangle him while whispering threatening comments in his ear. ECF No. 1 at 10; ECF No. 57 at 18, 21, ¶¶ 5, 14. At some point, a spit net was placed over plaintiff's head. DSUF ¶ 27; ECF No. 45-6 at 41 [PL Depo at 40:16-24].

When plaintiff was removed from the transportation cart, he alleges that handcuffs were applied so tightly that he believed the circulation to his wrists was cut-off and he was then "manhandled" to his new cell. ECF No. 57 at 19, ¶ 7. It is not clear whether the handcuffs he was already wearing were tightened or new handcuffs were applied. Upon arrival at plaintiff's new cell, defendant Blackburn took hold of plaintiff's handcuffs in order to control his movement. DSUF ¶ 33; ECF No. 57 at 19, ¶ 8. Defendants allege that plaintiff attempted to pull away from Blackburn as he took hold of the handcuffs and that plaintiff attempted to grab Blackburn's left hand. DSUF ¶¶ 34, 36. A retention chain was then attached to plaintiff's handcuffs and he was ordered to enter his cell. DSUF ¶¶ 37-38. Plaintiff refused the order and Blackburn took hold of plaintiff's left thumb and wrist and directed plaintiff into the cell. DSUF ¶¶ 39-40. Plaintiff admits that he did pull away from Blackburn, but claims that it was an involuntary reaction and did not happen until after Blackburn had control of him and began twisting and folding his wrists causing severe pain. ECF No. 57 at 21, ¶ 13. He denies attempting to grab Blackburn's hand. Id. at 20, ¶ 12. Plaintiff agrees that at some point a retention chain was attached to his handcuffs but does not explicitly deny that he refused an order to enter his cell. Id. at 19, ¶ 8. He states that after Blackburn finished folding his wrist and thumb he was shoved into his cell. Id.

Once plaintiff was in his cell, his leg irons were removed and the cell door was closed with the retention chain still attached to plaintiff's handcuffs. DSUF ¶¶ 43, 45; ECF No. 57 at 19, ¶ 8. Defendants state that after the cell door was shut, Blackburn

11

> ordered plaintiff to place his wrists through the food tray port and the handcuffs were removed. DSUF ¶ 46. Plaintiff alleges that after the cell door was shut, Blackburn turned away from the cell and ran while yanking the chain as hard as he could, resulting in plaintiff's arms being pulled though the food tray port up to his biceps. ECF No. 57 at 19, ¶¶ 8-9. There is no indication from either party that plaintiff resisted the order to place his wrists through the food tray port or offered any resistance after being locked in his cell.
>
> After the incident, plaintiff was evaluated by medical staff. DSUF ¶ 57; ECF No. 1 at 8. Defendants state that, while escorting plaintiff to medical, Blackburn noted only superficial scratches and scrapes on plaintiff. DSUF ¶ 56. The nurse noted that plaintiff stated he "got pulled through the food tray port," that he had right shoulder pain from a prior injury, and that he had superficial scrapes with no bleeding and some bruising or discoloration on his right shoulder. DSUF ¶¶ 58-59. Plaintiff claims that the report minimized his injuries and that his wrists "turned black and blue, bled and [his] arms were bruised all the way up to [his] inner biceps" and that following the use of force his hands were numb for weeks. ECF No. 57 at 20, ¶ 10.

ECF No. 73 at 6-8.

        c. <u>Discussion</u>

Although plaintiff has failed to address defendants' claim that he has no reasonable probability of success beyond a general assertion that his claims are meritorious (ECF No. 101 at 8-9), the record already contains plaintiff's arguments and evidence submitted in opposition to defendants' motion for summary judgment (ECF No. 57), which the court will rely up on in considering the motion to declare plaintiff a vexatious litigant.

It is undisputed that plaintiff refused several orders to exit the transportation cart, made hacking noises when ordered to exit, and attempted to pull away from defendant Blackburn at the front of his new cell. Therefore, as the court previously found, it appears that under both parties' version of what happened, some use of force was necessary, or at least reasonably believed to be necessary, in order to gain plaintiff's compliance in exiting the transportation cart, preventing him from spitting on officers, and placing him in his cell. ECF No. 73 at 10. In contrast, there is no evidence to suggest that force was necessary to remove plaintiff's handcuffs through the food tray port, because plaintiff was locked inside the cell and no longer posed a threat to the officers. Nor

1  is there evidence that plaintiff was refusing to comply with orders once he was placed in the cell.
2  The disputes therefore revolve around the specific actions of defendants and the levels of force
3  they used.
4  　　　　The resolution of these disputes is entirely dependent upon which version of the facts is
5  believed, and credibility determinations are generally within the province of the jury, not the
6  judge.  Both parties rely primarily on sworn declarations to support their version of events (ECF
7  No. 57 at 16-22, 58-60; ECF No. 88-2 at 5-31), and the declarations defendants rely on are no less
8  self-serving than plaintiff's.  Neither party has submitted any objective evidence, such as a video
9  recording of the incident.  This is somewhat concerning given (1) plaintiff's assertion that a video
10 camera was present for at least part of the incident (ECF No. 57 at 18), and (2) the lack of a
11 declaration from Sgt. Porter, who allegedly responded to the incident with a video camera, either
12 confirming or denying its presence.  Since nothing in the record contradicts plaintiff's contention
13 that there was a video camera present, the court assumes that one was.  In light of the presence of
14 a video camera during part of the incident, the court cannot rule out the possibility that the lack of
15 video, either because none was taken or it was not retained, means that a video of the incident
16 would be detrimental to defendants' case.
17 　　　　With regard to the severity of plaintiff's injuries, even if the court were to credit the
18 nurse's report as accurately depicting the injuries plaintiff suffered, a finding of minimal injury is
19 not dispositive.  A jury could find that one or both defendants used excessive force against
20 plaintiff even if it did not believe the force defendants used or the injuries sustained rose to the
21 level described by plaintiff.
22 　　　　Defendants make several additional unpersuasive arguments for why plaintiff has no
23 reasonable probability of prevailing in this case.  First, they argue that plaintiff's deception
24 regarding his litigation history warrants case terminating sanctions.  ECF No. 88-1 at 18-19.
25 Before the court could entertain such sanctions, plaintiff would have to be given notice and an
26 opportunity to respond and the court would have to consider whether any lesser sanctions, such as
27 ////
28 ////

monetary sanctions,[3] would be more appropriate. Fed. R. Civ. P. 11(c). Although plaintiff could have responded to defendants' argument on this ground, without a motion for sanctions pending or a warning that failure to address this specific issue may result in dismissal of the case, the court cannot find that plaintiff has been given the required notice and opportunity to respond. Absent plaintiff's response, or informed decision not to respond, the court cannot make a determination as to whether such sanctions would be appropriate.

Defendants also argue that they are entitled to qualified immunity. ECF No. 88-1 at 21. This claim fails here for the same reasons it failed as a ground for summary judgment. ECF No. 73 at 12-13.

Next defendants argue that plaintiff's claim for injunctive relief is now moot. ECF No. 88-1 at 22. While that may be the case, plaintiff also seeks compensatory and punitive damage (ECF No 1 at 10), so his inability to obtain injunctive relief has no effect on his overall ability to prevail in this case.

Finally, defendants argue that plaintiff's claim against defendant Marzan is Heck-barred[4] because plaintiff was found guilty of assaulting a peace officer and forfeited ninety days of time credits. ECF No. 88-1 at 23. They argue that "[a] finding in this action that Marzan used excessive force on Benyamini would mean that Benyamini did not provoke the use of force and that Marzan did not have a reasonable basis for believing that an assault on Officer Guerra was impending." Id. This argument is without merit. Given that the level of force used by Marzan is in dispute, a jury could easily find that defendant Marzan had a reasonable basis for believing Benyamini was attempting to spit on Officer Guerra while still finding that Marzan's response constituted an excessive use of force. The two are not mutually exclusive. Defendants' reliance on Cunningham v. Gates, 312 F.3d 1148 (9th Cir. 2002), is unavailing. In Cunningham, the plaintiff alleged excessive use of force after he was shot in a gun battle with the police. Id. at 1151. As a result of the shoot-out, Cunningham was "convicted of, among other things,

---

[3] Although plaintiff is proceeding in forma pauperis, he is no longer incarcerated and appears to have some income, which means monetary sanctions would not be out of the question as an appropriate remedy.

[4] Heck v. Humphrey, 512 U.S. 477, 487 (1994).

14

murdering [his accomplice] by provoking the police to shoot." Id.  The Ninth Circuit held that a finding that the police had used excessive force against Cunningham would necessarily imply the invalidity of his felony murder conviction because that conviction required the jury to find he had provoked the lethal response because it was an element of the crime. Id. at 1155.  There is nothing in the instant case to suggest that provoking an officer response is an element of the violation plaintiff was charged with or that plaintiff could not have been both guilty of the offense and subjected to excessive force.

For the reasons set forth above, the court is unable to find that plaintiff has no reasonable probability of prevailing.

Based on the foregoing, IT IS HEREBY RECOMMENDED that defendants' motion for an order declaring plaintiff a vexatious litigant and requiring security (ECF No. 88) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 22, 2017

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE